Michael B. Kramer & Associates
Michael B. Kramer (MK 7071)
Rubin Jay Ginsberg (RG 8978)
150 East 58th Street, Suite 1201
New York, New York 10155
(212) 319-0304
Attorneys for Plaintiff

**10 CIV 6554**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SEP 03 2010
U.S.D.C. S.D. N.Y.
CASHIERS

-------------------------------------------------------X
THE GOVERNMENT OF THE REPUBLIC
OF SOUTH AFRICA,

                       Plaintiff,

       -against-

ISAAC SONSINO and ELLEN SONSINO,

                       Defendants.
-------------------------------------------------------X

Index No.

**COMPLAINT**

Plaintiff, The Government of the Republic of South Africa (the "Republic of South Africa"), by its attorneys, Michael B. Kramer & Associates, as and for its Complaint against Defendants, Isaac Sonsino and Ellen Sonsino ("Defendants"), alleges as follows:

## NATURE OF THIS ACTION

1.     This is an action for breach of a certain residential lease, dated February 2, 2007 (the "Lease"), between Defendants, as Landlord, and the Republic of South Africa. As Tenant, for units 38A and 38C at 360 East 88th Street, New York, New York (the "Premises"), in which the Republic of South Africa asserts that Defendants have failed and refused to return to the Republic of South Africa any portion of its security deposit of Two Hundred Ninety Seven Thousand Dollars ($297,000.00) (the "Security Deposit") following the Republic of South Africa's timely and proper vacating of the Premises.

2.      In addition to breaching the Lease by failing to timely return the Security Deposit to the Republic of South Africa, Defendants are further required to immediately return the Security Deposit to the Republic of South Africa based upon the Defendants' failure to maintain the Security Deposit as required by §7-103 of the New York State General Obligations Law.

3.      Pursuant to New York Real Property Law § 234, the Republic of South Africa has a right to collect attorneys fees from the Defendants based upon the Defendants defaults under the Lease as are particularized below.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1332(a)(4). This Court has venue under 28 U.S.C. §§ 1391(a) as almost all of the events and circumstances giving rise to this claim took place in the State, City and County of New York and the Premises at issue is located in the State, City and County of New York.

## THE PARTIES

5.      Plaintiff, the Republic of South Africa, is a foreign state and a sovereign nation which is recognized by the United States Government through numerous treaties and international conventions. The Republic of South Africa maintains a United States and United Nations mission in the City, County, and State of New York.

6.      Defendants are the owners of the Premises, which is located within the State, City and County of New York.

## FACTUAL BACKGROUND

7.      On or about February 2, 2007, the Defendants, as landlord, and the Republic of South Africa, as tenant, entered into a residential lease for the Premises (the aforesaid Lease). (A copy of the Lease is annexed hereto as Exhibit "A").

8.      Pursuant to the terms of the Lease the monthly rent for the Premises was to be Thirty-Three Thousand Dollars ($33,000.00).

9.      Pursuant to the Lease, the Republic of South Africa deposited with the Defendants the Security Deposit, which, pursuant to applicable law (New York General Obligation Law § 7-103) was required to be held by the Defendants in a distinct, segregated, interest bearing, and non-commingled account.

10.      Pursuant to paragraph 1 of the Rider to the Lease, the Security Deposit was to be returned by the Defendants to the Republic of South Africa upon its vacating the Premises, save for any charges against the Security Deposit which were allowed based upon the Republic of South Africa causing damage to the Premises in excess of normal wear and tear.

11.      Pursuant to paragraph 36 of the Lease, Defendants granted to the Republic of South Africa the right to extend the Lease on the same terms and conditions contained therein, provided the Republic of South Africa gave notice to Defendants that it intended to so extend the Lease, in writing, by a date no later than August 4, 2008 (a date one hundred and eighty [180] days prior to the expiration of the Lease on February 1, 2009).

12.      At no time did the Republic of South Africa ever send the Defendants notice, either orally or in writing, that it sought to extend the Lease, in its original form, as provided for by paragraph 36 of the Lease.

13.     Pursuant to paragraph 15(c) of the Lease, beginning six (6) months prior to the expiration of the Lease (being a date following the expiration of the Republic of South Africa's option to extend the Lease pursuant to paragraph 3 of the Lease), Defendants were permitted to "show" the Premises to persons who might wish to rent the Premises following the expiration of the Lease.

14.     In accordance with paragraph 15(c) of the Lease, Defendants did "show" the Premises to third parties who, upon information and belief, were interested in renting the Premises.

15.     During the fall of 2008, at a time well after the expiration of the extension option contained in paragraph 36 of the Lease, the Republic of South Africa informed the Defendants that it would be interested in negotiating a new lease for the Premises under new terms and conditions which would have to be agreed upon.

16.     Making clear that the parties understood that they were not discussing an extension of the Lease pursuant to paragraph 36 of the Lease, Defendants prepared a new one (1) year lease agreement which it tendered to the Republic of South Africa.

17.     Upon the receipt of the proposed new lease in November, 2008, the Republic of South Africa's New York representatives informed the Defendants that the draft lease would have to be referred to Department of Foreign Affairs' Head Office in Pretoria, South Africa for review, guidance and/or approval.

18.     The Republic of South Africa did not approve the aforementioned draft lease agreement and, therefore, such agreement was never executed by the Republic of South Africa.

19.     In January 2009, it was determined by the Republic of South Africa that the occupant of the Premises, Ambassador Baso Sangqu, was to be appointed the Permanent

Representative of the Republic of South Africa to the United Nations as of March, 2009, and would therefore be moving into a residence in New York City owned by the Republic of South Africa.

20.     Having no need to continue to occupy the Premises, and having failed to reach agreement on a new lease with Defendants concerning the continued occupancy of the Premises, in January, 2009, representatives of the Republic of South Africa contacted the Defendants and inquired about the possibility of allowing the Republic of South Africa to remain in possession of the Premises for two (2) months beyond the expiration of the term of the Lease, i.e., until March 31, 2009.

21.     Further to the Republic of South Africa's request to remain in possession of the Premises through March 31, 2009, the Republic of South Africa forwarded a draft agreement to such effect to the Defendants.

22.     Following the expiration of the term of the Lease on January 31, 2009, the Republic of South Africa remained in possession of the Premises as a month-to-month tenant pursuant to New York Real Property Law §232-c.

23.     Defendants took no action to terminate the Republic of South Africa's month-to-month tenancy.

24.     In the latter half of February, 2009, the Defendants met with representatives of the Republic of South Africa.

25.     At the aforesaid meeting of February, 2009, the Defendants informed the Republic of South Africa that they considered the unsigned draft lease of November, 2009 to be legally operative and/or that a verbal agreement existed between the parties, thus requiring the

Republic of South Africa to remain in the Premises through either November, 2009 or January, 2010.

26.     The Republic of South Africa made clear at the aforesaid meeting in February, 2009 that at no time did it ever agree to enter into a one (1) year lease extension for the Premises.

27.     The Republic of South Africa, as month-to-month tenants for the months of February and March, 2009, tendered rent for said months to the Defendants.

28.     The Defendants accepted the month-to-month rental payments of the Republic of South Africa for the period of February and March, 2009.

29.     As promised by the Republic of South Africa, the Premises were fully vacated during March, 2009.

30.     Following the Republic of South Africa's vacatur of the Premises in March, 2009, Defendants indicated to the Republic of South Africa that Defendants would not return any portion of the Security Deposit to the Republic of South Africa, and instead, Defendants would hold said amount as against allegedly unpaid rent for the period from April, 2009 through and including November 2009 and/or January 31, 2010 based upon Defendants assertion that the Lease had been extended for one (1) year.

31.     The Republic of South Africa has made demand for the return of the Security Deposit.

32.     The Defendants have failed and refused to return any portion of the Security Deposit to the Republic of South Africa.

33.     Upon information and belief, the Defendants have commingled the Security Deposit with other funds.

34.     At no time did the Defendants ever provide notice to the Republic of South Africa of the name and address of the banking institution in which it was maintaining the Security Deposit in violation of New York General Obligations Law § 7-103(2).

35.     Upon information and belief the Defendants failed to place the Security Deposit in an interest bearing account.

36.     The Premises are located in a building which contains more than six (6) units.


## AS AND FOR A FIRST CLAIM (Breach of Contract)

37.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 - 36 as if fully set forth herein.

38.     The Lease represents a binding agreement between the Republic of South Africa and the Defendants.

39.     Defendants have materially breached the terms of the Agreement by failing to timely and fully return the Security Deposit to the Republic of South Africa which was due to be returned to the Republic of South Africa on March 31, 2009.

40.     As a consequence of Defendants' material breach of the Lease, the Republic of South Africa has suffered damages in an amount not less than  Two Hundred Ninety Seven Thousand Dollars ($297,000.00), plus statutory interest from and after March 31, 2009.

41.     In light of the foregoing, the Republic of South Africa should be awarded judgment against the Defendants in the amount of Two Hundred Ninety Seven Thousand Dollars ($297,000.00) together with statutory interest from and after March 31, 2009.

## AS AND FOR A SECOND CLAIM (Breach of GOL §7-103)

42.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 - 41 as if fully set forth herein.

43.    Pursuant to New York General Obligations Law § 7-103(1) the Defendants were obligated to place the Security Deposit in a segregated, non-commingled bank account.

44.    Pursuant to New York General Obligations Law § 7-103(2-a), the Defendants were obligated to deposit the Security Deposit in an interest bearing account.

45.    Pursuant to New York General Obligations Law § 7-103(3) any provision of the Lease which is contrary to the requirements of General Obligations Law §7-103 are void.

46.    Pursuant to New York General Obligations Law § 7-103(2) the Defendants were obligated to provide the name and address of the banking institution where the Security Deposit was deposited to the Republic of South Africa.

47.    Defendants failed to comply the foregoing requirements of New York General Obligations Law § 7-103.

48.    In light of the foregoing, the Defendants have forfeited any right to maintain the Security Deposit and must immediately return same to the Republic of South Africa.

49.    In light of the foregoing, the Republic of South Africa should be awarded judgment against the Defendants in the amount of Two Hundred Ninety Seven Thousand Dollars ($297,000.00) together with statutory interest from and after March 31, 2009.

## AS AND FOR A THIRD CLAIM (Attorney's Fees)

50.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 - 49 as if fully set forth herein.

51.     Paragraph 20(a)(iv) of the Lease contains a provision which purports to grant a right to recover attorneys fees to the Defendants based upon any default by the Republic of South Africa in the performance of its obligations under the Lease.

52.     Pursuant to New York Real Property Law § 234 the right to recover attorney's fees based upon a default under the terms of the Lease is made reciprocal.

53.     The Republic of South Africa has incurred, and will continue to incur attorneys' fees, costs and disbursements in connection with this matter in an amount to be determined by the Court, but in no event less than Fifty Thousand Dollars ($50,000.00).

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(a)     On Plaintiff's First Claim, a judgment in the amount of Two Hundred Ninety Seven Thousand Dollars ($297,000.00) together with statutory interest from and after March 31, 2009;

(b)     On Plaintiff's Second Claim, a judgment in the amount of Two Hundred Ninety Seven Thousand Dollars ($297,000.00) together with statutory interest from and after March 31, 2009;

(c)     On Plaintiff's First Claim, a judgment in an amount to be determined by the Court, but in no event less than Fifty Thousand Dollars ($50,000.00); and,

(d)      Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 3, 2010

Respectfully submitted,

MICHAEL B. KRAMER & ASSOCIATES

By:_____
MICHAEL B. KRAMER (7071)
Attorneys for Plaintiff
150 East 58th Street
New York, New York 10155
212-319-0304

# Exhibit A

## STANDARD FORM OF CONDOMINIUM APARTMENT LEASE
### THE REAL ESTATE BOARD OF NEW YORK, INC.

**PREAMBLE** This Lease contains the agreements between You and Owner concerning the rights and obligations of each party. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease carefully. If You have any questions, or if You do not understand any words or statements, get clarification. Once You and Owner sign this Lease, You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease except for obligations arising under the Condominium Documents (as defined in Article 4). You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made as of **FEBRUARY** month **02** day **2007** year between Owner the Lessor Isaac & Ellen Sonsino

whose address is                                                                                        and
You the Lessee The Government of the Republic of South Africa

whose address is

1.  **APARTMENT AND USE**

Owner agrees to lease to You Condominium Unit 38 A and C ____ floor in the condominium apartment building at 360 East 88th Street State of New York, which is known as the Leighton House (the "Apartment") on the Borough of Manhattan City and Condominium (the "Condominium"). You shall use the Apartment for living purposes only. The Apartment may be occupied only by _____ the following Permitted Occupants Mr and Mrs Isaac Sangoa and their children

You acknowledge that (i) this Lease may not commence until the Condominium has waived any first refusal rights that it may have with respect to the Lease; and (ii) no other person other than You and the Permitted Occupants may reside in the Apartment without the prior written consent of the Owner and the Condominium

2.  **LENGTH OF LEASE**

The term (that means the length) of this Lease will begin on **February 1, 2007** and will end on January 31, **2009**. If You do not do everything You agree to do in this Lease, Owner may have the right to end this Lease before the ending date. If Owner does not do everything that Owner agrees to do in this Lease, You may have the right to end the Lease before the ending date. You acknowledge that the term of this Lease may be reduced as authorized by Article 6.

3.  **RENT**

Your monthly rent for the Apartment is $ 33,000.00 . You must pay Owner the rent, in advance, on the first day of each month either to Owner at the above address or at another place that Owner may direct by written notice. You must pay the first month's rent to Owner when You sign this Lease if the Lease begins on the first day of the month. If the Lease begins after the first day of the month, You must pay when You sign this Lease (i) the part of the rent from the beginning date of this Lease until the last day of the month, and (ii) the full rent for the next full calendar month.

4.  **CONDOMINIUM DOCUMENTS**

This Lease shall be subject and subordinate to (i) the Declaration of Condominium, (ii) the Rules and Regulations of the Condominium (which are sometimes called House Rules) and (iii) the By-Laws of the Condominium (The Declaration, the Rules and Regulations and the By-Laws of the Condominium and all amendments thereto, including any amendments subsequent to the date hereof are collectively called the "Condominium Documents".) In the event of any inconsistency between the provisions of this Lease and the Condominium Documents, the provisions of the Condominium Documents shall govern and be binding.

You and the Permitted Occupants of the Apartment shall faithfully observe and comply with the Condominium Documents, other than the provisions of the Condominium Documents required to be performed by Owner (which include the payment of common charges for the Apartment to the Condominium). You and the Permitted Occupants of the Apartment shall not undertake any action which if performed by Owner would constitute a violation of the Condominium Documents. You have reviewed the Condominium Documents or waived their examination.

5.  **SECURITY DEPOSIT**

You are required to give Owner the sum of $ _____ when you sign this Lease as a security deposit, which is called in law a "trust". Owner will deposit this security in _____ bank at _____, New York. This security account shall not pay interest.

If You carry out all of your agreements in this Lease and if You move out of the Apartment and return it to Owner in the same condition it was in when You first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty through no fault of your own, Owner will return to You the full amount of your security deposit within 60 days after this Lease ends. However, if You do not carry out all your agreements in this Lease, Owner may keep all or part of your security deposit which has not yet been paid to Owner as necessary to pay Owner for any losses incurred, including missed payments.

If Owner sells the Apartment, Owner will turn over your security either to You or to the person buying the Apartment within 5 days after the sale. Owner will then notify You by registered or certified mail of the name and address of the person or company to whom your deposit has been turned over. In such case, Owner will have no further responsibility to You for the security deposit. The new owner will become responsible to You for the security deposit.

6.  **IF YOU ARE UNABLE TO MOVE IN**

A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, including the failure to obtain a waiver of any first refusal right that the Condominium may have with respect to this Lease prior to the beginning date, Owner will not be responsible for your damages or expenses and this Lease will remain in effect. However, in such case, the Lease will start on the date when You can move in the ending date of this Lease as specified in Article 2 will remain the same. You will not have to pay rent until the move-in date Owner gives You by written notice of the date You move in whichever is earlier. If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, this Lease shall be canceled and all prepaid rent and security deposit shall be promptly returned to You.

7.    CAPTIONS

In any dispute arising under this Lease, in the event of a conflict between the text and a caption the text controls.

8     WARRANTY OF HABITABILITY

A. All of the sections of this Lease are subject to the provisions of the Warranty of Habitability Law in the form it may have from time to time during this Lease. Nothing in this Lease can be interpreted to mean that You have given up any of your rights under that law. Under that law, Owner agrees that the Apartment is fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety.

B. You will do nothing to interfere to make more difficult the Condominium's efforts to provide You and all other occupants of the Condominium with the required facilities and services. Any condition caused by your misconduct or the misconduct of anyone under your direction or control shall not be a breach by Owner.

9     CARE OF YOUR APARTMENT, END OF LEASE-MOVING OUT

A. You will take good care of the Apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. You will move out on or before the ending date of this Lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty through no fault of your own.

B. When the Lease ends, You must remove all of your movable property. You must also remove at your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment You may have installed in the Apartment even if it was done with Owner's consent. If the Condominium imposes any "move-out" deposits or fees, You shall pay any such deposit or fee when requested by the Condominium. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture and other property of yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, Owner may either treat You as still in occupancy and charge You for use or may consider that You have given up the Apartment and any property remaining in the Apartment. In this event, Owner may either discard the property or store it at your expense. You agree to pay Owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of this Lease.

10    CHANGES AND ALTERATIONS TO APARTMENT

You cannot build in, add to, change or alter the Apartment in any way, including wallpapering, painting, repainting, or other decorating, without first obtaining the prior written consent of Owner and if required under the Condominium Documents, the Condominium. Without Owner's and/or the Condominium's prior written consent, You cannot install or use in the Apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating or air conditioning units or any other electrical equipment which, in Owner's and/or the Condominium's opinion, will overload the existing wiring installation in the Condominium or interfere with the use of such electrical wiring facilities by other occupants of the Condominium. Also, You cannot place in the Apartment water-filled furniture.

11    YOUR DUTY TO OBEY AND COMPLY WITH LAWS, REGULATIONS AND RULES

A. GOVERNMENT LAWS AND ORDERS. You will obey and comply (i) with all present and future city, state and federal laws and regulations which affect the Condominium or the Apartment, and (ii) with all orders and regulations of insurance rating organizations which affect the Apartment and the Condominium. You will not allow any windows in the Apartment to be cleaned from the outside unless the prior written consent of the Condominium is obtained.

B. CONDOMINIUM'S RULES AFFECTING YOU. You will obey all of the Condominium Documents other than the provisions of the Condominium Documents required to be performed by Owner.

C. YOUR RESPONSIBILITY. You are responsible for the behavior of yourself, the Permitted Occupants of the Apartment, your servants and people who are visiting You. You will reimburse Owner as additional rent upon demand for the cost of all losses, damages, fines and reasonable legal expenses incurred by Owner because You, the Permitted Occupants of the Apartment, servants or people visiting the Apartment, have not obeyed government laws and orders, the Condominium Documents or this Lease.

12    OBJECTIONABLE CONDUCT

You, the Permitted Occupants of the Apartment, servants or people visiting the Apartment will not engage in objectionable conduct at the Condominium. Objectionable conduct means behavior which makes or will make the Apartment or the Condominium less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their apartments, or causes conditions that are dangerous, hazardous, unsanitary and detrimental to other occupants of the Condominium. Objectionable conduct by You gives Owner the right to end this Lease.

13    SERVICES AND FACILITIES

A. REQUIRED SERVICES. The Condominium will provide cold and hot water and heat, as required by law, repairs to the Apartment as required by the Condominium Documents, elevator service if the Condominium has elevator equipment, and the utilities, if any, included in the rent, as set forth in subparagraph B. You are not entitled to any rent reduction because of a stoppage or reduction of any of the above services unless it is provided by law.

B. The following utilities are included in the rent:    NONE

C. ELECTRICITY AND OTHER UTILITIES. If the Condominium provides electricity or gas for a separate submetered charge, your obligations to the Condominium and/or Owner are described in a rider attached to this Lease. If electricity or gas is not included in the rent and is not charged separately by the Condominium and/or Owner, You must arrange for this service directly with the utility company. You must also pay directly for telephone service and cable television service if the cost of any such service is not included in the rent.

D. APPLIANCES. Appliances supplied by Owner in the Apartment are for your use. They are in good working order on the date hereof and will be maintained and repaired or replaced by Owner, but if repairs or replacement are made necessary because of your negligence or misuse. You will pay Owner for the cost of such repair or replacement as additional rent.

E. FACILITIES. If the Condominium permits Owner to use any storeroom, storage bin, laundry or any other facility located in the Condominium but outside of the Apartment and provided such use is transferable to You by Owner, pursuant to the Condominium Documents, the use of any such facility will be furnished to You free of charge and at your own risk. You will operate at your own expense any coin operated appliances located in any such facility.

14    INABILITY TO PROVIDE SERVICES

Because of a strike, labor trouble, national emergency, repairs, or any other cause beyond Owner's and the Condominium's reasonable control, Owner and the Condominium may not be able to provide or may be delayed in providing any services or in making any repairs to the Apartment and/or the Condominium. In any of these events, any rights You may have against Owner are only those rights which are allowed by laws in effect when the reduction in service occurs.

15    ENTRY TO APARTMENT

During reasonable hours and with reasonable notice, except in emergencies. Owner, Owner's representatives and agents or employees of the Condominium may enter the Apartment for the following reasons.

A. To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment, and to make any necessary repairs or changes Owner or the Condominium decide are necessary. Your rent will not be reduced because of any of this work, unless the common charges payable by Owner to the Condominium are reduced.

B. To show the Apartment to persons who may wish to become owners of the Apartment or may be interested in lending money to Owner.

C. For six months before the end of the Lease, to show the Apartment to persons who wish to lease it.

D. If, during the last month of the Lease, You have moved out and removed all or almost all of your property from the Apartment, Owner may enter to make changes, repairs or redecorations. Your rent will not be reduced for that month and this Lease will not be ended by Owner's entry.

E. If, at any time, You are not personally present to permit Owner, Owner's representatives or the agents and employees of the Condominium, to enter the Apartment and entry is necessary or allowed by law under the Condominium Documents or this Lease, Owner, Owner's representatives or the agents and employees of the Condominium may nevertheless enter the Apartment. Owner, Owner's representatives or the agents and employees of the Condominium may enter by force in an emergency. Owner will not be responsible to You, unless during this entry, any authorized party is negligent or misuses your property.

16    ASSIGNING, SUBLETTING, ABANDONMENT

A. Assigning and Subletting. You cannot assign this Lease or sublet the Apartment. You acknowledge that Owner may refuse any request made by You to assign this Lease or to sublet the Apartment for any reason or no reason.

B. Abandonment. If You move out of the Apartment (abandonment) before the end of this Lease without the consent of Owner, this Lease will not be ended. You will remain responsible for each monthly payment of rent as it becomes due until the end of this Lease. In case of abandonment your responsibility for rent will end only if Owner chooses to end this Lease for default as provided in Article 17.

17    DEFAULT

A. You default under the Lease if You act in any of the following ways:

   (i)    You fail to carry out any agreement or provision of this Lease;

   (ii)   You, a Permitted Occupant of the Apartment, servants or people visiting the Apartment behave in an objectionable manner;

   (iii)  You, a Permitted Occupant of the Apartment, servants or people visiting the Apartment violate any of the Condominium Documents;

   (iv)   You do not take possession or move into the Apartment 15 days after the beginning of this Lease; or

   (v)    You and the Permitted Occupants of the Apartment move out permanently before this Lease ends.

If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within 10 days. You must then either stop or correct the default within 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.

B. If You do not stop or begin to correct a default within 10 days, Owner may give You a second written notice that this Lease will end 6 days after the date the second written notice is sent to You. At the end of the 6-day period, this Lease will end. You then must move out of the Apartment. Even though this Lease ends, You will remain liable to Owner for unpaid rent up to the end of this Lease, the value of your occupancy, if any, after the Lease ends, and damages caused to Owner after that time as stated in Article 18.

C. If You do not pay your rent when this Lease requires after a personal demand for rent has been made, or within 3 days after a statutory written demand for rent has been made, or if the Lease ends Owner may do the following: (i) enter the Apartment and retake possession of it if You have moved out; (ii) go to court and ask that You and all other occupants in the Apartment be compelled to move out.

Once this Lease has been ended, whether because of default or otherwise, You give up any right You might otherwise have to reinstate this Lease.

18.    REMEDIES OF OWNER AND YOUR LIABILITY

If this Lease is ended by Owner because of your default, the following are the rights and obligations of You and Owner.

A. You must pay your rent until this Lease has ended. Thereafter, You must pay an equal amount for what the law calls "use and occupancy" until You actually move out.

B. Once You are out, Owner may re-rent the Apartment or any portion of it for a period of time which may end before or after the ending date of this Lease. Owner may re-rent to a new subtenant at a lesser rent or may charge a higher rent than the rent in this Lease.

C. Whether the Apartment is re-rented or not, You must pay to Owner as damages:

   (i) the difference between the rent in this Lease and the amount, if any, of the rents collected in any later lease of the Apartment for what would have been the remaining period of this Lease; and

   (ii) Owner's expenses for the cost of putting the Apartment in good condition for re-rental; and

   (iii) Owner's expenses for attorney's fees. (Delete if inapplicable)

D. You shall pay all damages due in monthly installments on the rent day established in this Lease. Any legal action brought to collect one or more monthly installments of damages shall not prejudice in any way Owner's right to collect the damages for a later month by a similar action. If the rent collected by Owner from a subsequent subtenant of the Apartment is more than the unpaid rent and damages which You owe Owner, You cannot receive the difference. Owner's failure to re-rent to another subtenant will not release or change your liability for damages, unless the failure is due to Owner's deliberate inaction.

19    ADDITIONAL OWNER REMEDIES

If You do not do everything You have agreed to do, or if You do anything which shows that You intend not to do what You agreed to do, Owner has the right to ask a Court to make You carry out your agreement or to give the Owner such other relief as the Court can provide. This is in addition to the remedies in Article 17 and 18 of this Lease.

20    FEES AND EXPENSES

A. You must reimburse Owner for any of the following fees and expenses incurred by Owner:

   (i) Making any repairs to the Apartment or the Condominium, including any appliances in the Apartment, which result from misuse or negligence by You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You.

   (ii) Correcting any violations of city, state or federal laws or orders and regulations of insurance rating organization concerning the Apartment or the Condominium which You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You have caused.

(iii) Preparing the Apartment for the next tenant if You move out of the Apartment before this Lease ending date without Owner's prior written consent;

(iv) Any legal fees and disbursements for legal actions or proceedings brought by Owner against You because of a default by You for defending lawsuits brought against Owner because of the actions of You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You. (Delete if inapplicable)

(v) Removing all of your property after this Lease is ended;

(vi) Any miscellaneous charges payable to the Condominium for services You requested that are not required to be furnished to You under this Lease for which You have failed to pay the Condominium and which Owner has paid

(vii) All other fees and expenses incurred by Owner because of the failure to obey any other provisions and agreements of this Lease or the Condominium Documents by You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You.

These fees and expenses shall be paid by You to Owner as additional rent within 30 days after You receive Owner's bill or statement. If this Lease has ended when these fees and expenses are incurred, You will still be liable to Owner for the same amount as damages

B.  Owner agrees that unless subparagraph (iv) of subparagraph 20 A has been stricken out of this Lease, You have the right to collect reasonable legal fees and expenses incurred in a successful defense by You of a lawsuit brought by Owner against You or brought by You against Owner in the extent provided by Real Property Law Section 234

C.  You shall pay the Condominium on demand for the cost of any miscellaneous charges payable to the Condominium for services You requested that are not required to be furnished You under this Lease

21      PROPERTY LOSS, DAMAGES OR INCONVENIENCE

Unless caused by the negligence or misconduct of Owner, Owner's representatives or the agents and employees of the Condominium, none of these authorized parties are responsible to You for any of the following: (i) any loss of or damage to You or your property in the Apartment or the Condominium due to any accidental or intentional cause, even a theft or other crime committed in the Apartment or elsewhere in the Condominium; (ii) any loss of or damage to your property delivered to any agent or employee of the Condominium (i.e. doorman, superintendent, etc.); or (iii) any damage or inconvenience caused to You by actions, negligence or violations of lease or the Condominium Documents made by any other tenant or person in the Condominium except to the extent required by law

Owner will not be liable for any temporary interference with light, ventilation, or view caused by construction by or on behalf of the Condominium. Owner will not be liable for any such interference on a permanent basis caused by construction on any parcel of land not owned by Owner or the Condominium. Owner will not be liable to You for such interference caused by the permanent closing, darkening or blocking up of windows, if such action is required by law. None of the foregoing events will cause a suspension or reduction of the rent or allow You to cancel the Lease

22.     FIRE OR CASUALTY

A.  If the Apartment becomes unusable, in part or totally, because of fire, accident or other casualty, this Lease will continue unless ended by Owner under subparagraph C below or by You under subparagraph D below. However, the rent will be reduced immediately. This reduction will be based upon the square footage of the part of the Apartment which is unusable

B.  Owner and/or the Condominium will repair and restore the Apartment, unless Owner decides to take actions described in subparagraph C below

C.  After a fire, accident or other casualty in the Building, the Condominium may decide to tear down the Condominium building or to substantially rebuild it. In such case, Owner need not restore the Apartment but may end this Lease even if the Apartment has not been damaged, by giving You written notice of this decision within 30 days after the date when the damage occurred. If the Apartment is unusable when Owner gives You such notice, this Lease will end 60 days from the last day of the calendar month in which You were given the notice.

D.  If the Apartment is completely unusable because of fire, accident or other casualty and it is not repaired in 30 days, You may give Owner written notice that You end the Lease. If You give that notice, this Lease is considered ended on the day that the fire, accident or casualty occurred. Owner will promptly refund your security deposit and the pro rata portion of rents paid for the month in which the casualty happened.

E.  Unless prohibited by the applicable policies, to the extent that such insurance is collected, You and Owner release and waive all right of recovery against the other or anyone claiming through or under each by way of subrogation.

F.  You acknowledge that if fire, accident, or other casualty causes damage to any of your personal property in the Apartment including, but not limited to your furniture and clothes, neither the Owner nor the Condominium will be responsible to You for the repair or replacement of any such damaged personal property unless such damage was as a result of the Owner's or the Condominium's negligence

23      PUBLIC TAKING

The entire Condominium or a part of it can be acquired (condemned) by any government or government agency for a public or quasi-public use or purpose. If this happens, this Lease shall end on the date the government or agency take title. You shall have no claim against Owner for any damage resulting. You also agree that by signing this Lease, You assign to Owner any claim against the government or government agency for the value of the unexpired portion of this Lease

24      SUBORDINATION, CERTIFICATE AND ACKNOWLEDGMENTS

All mortgages on the Apartment now in effect or made after this Lease is signed, and any lien created by the Condominium Documents come ahead of this Lease. In other words, this Lease is "subject and subordinate to" any lien created by the Condominium Documents and existing or future mortgages on the Apartment, including any renewals, consolidations, modifications and replacements of any such mortgage. If certain provisions of any such mortgage or the Condominium Documents come into effect, the holder of any such mortgage or the Condominium can end this Lease and such parties may commence legal action to evict You from the Apartment. If this happens, You acknowledge that You have no claim against Owner, the Condominium or such mortgage holder. If Owner requests, You will sign promptly an acknowledgment of the "subordination" in the form that Owner may require.

You also agree to sign (if accurate) a written acknowledgment to any third party designated by Owner that this Lease is in effect that Owner is performing Owner's obligation under this Lease, and that You have no present claim against Owner.

25      YOUR RIGHT TO LIVE IN AND USE THE APARTMENT

Provided the Condominium waives any right of first refusal it may have with respect to this Lease. If You pay the rent and any required additional rent on time and You do everything You have agreed to do in this Lease, your tenancy cannot be cut off before the ending date, except as provided for in Articles 22, 23 and 24

26.  BILLS AND NOTICE

A.  Notices to You.  Any notice from Owner or Owner's agent or attorney will be considered properly given to You if (i) it is in writing, (ii) signed by or in the name of Owner or Owner's agent, and (iii) addressed to You at the Apartment and delivered to You personally or sent by registered or certified mail to You at the Apartment.  The date of service of any written notice by Owner to You under this agreement is the date of delivery or mailing of such notice.

B.  Notices to Owner.  If You wish to give a notice to Owner, You must write it and deliver it or send it by registered or certified mail to Owner at the address noted on page 1 of this Lease or at another address of which Owner or Agent has given You written notice.

27.  GIVING UP RIGHT TO TRIAL BY JURY AND COUNTERCLAIM

A.  Both You and Owner agree to give up the right to a trial by jury in a court action, proceeding or counterclaim on any matters concerning this Lease, the relationship of You and Owner as lessee and lessor or your use or occupancy of the Apartment.  This agreement to give up the right to a jury trial does not include claims for personal injury or property damage.

B.  If Owner begins any court action or proceeding against You which asks that You be compelled to move out, You cannot make a counterclaim unless You are claiming that Owner has not done what Owner is supposed to do about the condition of the Apartment or the Condominium.

28.  NO WAIVER OF LEASE PROVISIONS

A.  Even if Owner accepts your rent or fails once or more often to take action against You when You have not done what You have agreed to do or this Lease the failure of Owner to make action or Owner's acceptance of rent does not prevent Owner from taking action at a later date if You against do not do what You have agreed to do.

B.  Only a written agreement between You and Owner can waive any violation of this Lease.

C.  If You pay and Owner accepts an amount less than all the rent due, the amount received shall be considered to be in payment of all or part of the earliest rent due.  It will not be considered an agreement by Owner to accept this lesser amount in full satisfaction of all of the rent due unless there is a written agreement between You and Owner.

D.  Any agreement to end this Lease and also to end the rights and obligations of You and Owner must be in writing, signed by You and Owner or Owner's agent.  Even if You give keys to the Apartment and they are accepted by either any employee or agent of the Condominium, Owner's representatives or Owner, this Lease is not ended.

E.  This Lease or any provision hereof, may not be modified, amended, extended, waived or abrogated without the prior written consent of the Condominium.

29.  CONDITION OF THE APARTMENT

When You signed this Lease, You did not rely on anything said by Owner, Owner's representatives or the Condominium's employees, agents, or superintendent about the physical condition of the Apartment, the Condominium or the land on which is built.  You did not rely on any promises as to what would be done, unless what was said or promised is written in this Lease and signed by both You and Owner.  Before signing this Lease, You have inspected the Apartment and You accept it in its present condition "as is", except for any condition which You could not reasonably have seen during your inspection.  You agree that Owner has not promised to do any work in the Apartment except as specified in a rider attached to this Lease.

30.  DEFINITIONS

A.  Owner.  The term "Owner" means the person or organization receiving or entitled to receive rent from You for the Apartment at any particular time other than a rent collector or managing agent of Owner.  "Owner" is the person or organization that owns legal title to the Apartment.  It does not include a former Owner, even if the former Owner signed this Lease.

B.  You.  The term "You" means the person or persons signing this Lease as lessee and the successors and assigns of the signer.  This Lease has established a lessor-lessee relationship between Owner and You.

31.  SUCCESSOR INTERESTS

The agreements in this Lease shall be binding on Owner and You and on those who succeed to the interest of Owner or You by law, by approved assignment or by transfer.

32.  INSURANCE

You may obtain liability insurance insuring You, the Permitted Occupants of the Apartment, your servants and people visiting the Apartment and personal property insurance insuring your furniture and furnishings and other items of personal property located in the Apartment.  You may not maintain any insurance with respect to any furniture or furnishings belonging to Owner that are located in the Apartment.  You acknowledge that Owner may not be required to maintain any insurance with respect to the Apartment.

33.  WAIVER OF CONDOMINIUM'S FIRST REFUSAL RIGHT  [DELETE IF INAPPLICABLE]

You shall furnish to the Condominium or its managing agent, within 5 business days after the date of this Lease, such personal and financial references and additional information concerning You and the Permitted Occupants of the Apartment as may be requested in order to obtain the waiver of the Condominium's right of first refusal with respect to this Lease, including the submission of any application requested by the Condominium.

You acknowledge that this Lease will not commence and that You and the Permitted Occupants shall have no right to occupy the Apartment until the waiver of the Condominium's right of first refusal with respect to this Lease is obtained.  If such waiver has not been obtained by the date specified in Article 2 as the beginning date of this Lease, You shall have no obligation to pay rent until such waiver has been obtained.  All rent prepaid for the period You are unable to occupy the Apartment because of the failure to obtain such waiver shall be applied by Owner to subsequent rent payable hereunder.  If such waiver is not obtained within 30 days after the date specified in Article 2 as the beginning date of this Lease, this Lease shall be canceled and all prepaid rent and security deposit shall be promptly returned to You.

34.  FURNITURE  [DELETE IF INAPPLICABLE]

The furniture being rented is described in a rider attached to this Lease and is all furniture and furnishings contained in the Apartment.  You shall accept the furniture and furnishings contained in the Apartment "as is" on the commencement date of this Lease.  Owner represents that all such furniture and furnishings are in good repair and in working order on the commencement date of this Lease except as may be noted in such rider.

You shall take good care of the furniture and furnishings in the Apartment during the pendency of this Lease and shall be liable for any damages caused by You to such furniture and furnishings.  You shall not be responsible for any damages to such furniture and furnishings not caused by You or caused by ordinary wear and tear.  You shall surrender such furniture and furnishings when this Lease terminates in the same condition as or the date this Lease commenced, subject to ordinary wear and tear.  If any repairs are required to the furniture and furnishings in the Apartment when this Lease terminates, You shall pay Owner upon demand the cost of any required repairs.

You may not remove any furniture or furnishings from the Apartment or change the location of any such furniture or furnishings during the pendency of this Lease without Owner's prior written consent.

35. BROKER [DELETE EITHER PARAGRAPH A OR B]

A. You represent to Owner that You have not dealt with any real estate broker(s) in connection w... the lease _ of the Apartment other than _____ (and that _____ is your real estate broker in connection with the leasing of the Apartment (delete bracket if inapplicable)) You will compensate such broker(s) in accordance with a separate agreement. You shall indemnify and hold Owner harmless from any and all loss incurred by Owner as a result of a breach of the foregoing representation

B. You represent to Owner that You have not dealt with any real estate broker in connection with the leasing of the Apartment You shall indemnify and hold Owner harmless from any and all loss incurred by Owner as a result of a breach of the foregoing representation

36. YOUR OPTION TO RENEW [DELETE IF INAPPLICABLE]

A. You shall have the right to extend the term of this Lease for _____ year(s) commencing February 1, 2009 and ending on January 31, 2010 _____ (the "Extension Term") provided (i) You give Owner notice (the "Extension Notice") in the manner required under this Lease of your election to extend the term of this Lease, (ii) the Election Notice must be given Owner at least _____ days prior to the ending date of this Lease stated in Article 2 and (iii) You may not be in default of any provisions of this Lease when the Extension Notice is given and on the commencement date of the Extension Term. If You fail to send the Extension Notice to Owner by the date specified herein this Article 36 shall be of no further force and effect

B. The monthly rent payable by You during the Extension Term shall be $ 12,000.00 _____

C. All provisions of this Lease except as modified by this Article 36 shall remain in full force and effect during the Extension Term

37. LEAD PAINT DISCLOSURE [DELETE IF THE CONDOMINIUM WAS ERECTED AFTER 1978]

Simultaneously with the execution of this Lease, You and Owner shall sign and complete the disclosure of information on lead-based paint and/or lead-based paint hazards annexed as a rider attached to this Lease. You acknowledge receipt of the pamphlet 'Protect Your Family From Lead In Your Home' prepared by the United States Environmental Protection Administration

38. PETS [DELETE EITHER SUBPARAGRAPH A OR B]

A. You may not keep any pets in the Apartment

B. If authorized by the Condominium Documents, You may keep pets in the Apartment provided (i) You obtain the prior written consent of Owner, and (ii) You comply with the Condominium Documents with respect to the keeping of pets in the Condominium

39. KEYS

Owner shall retain keys to all locks of the Apartment. If You make any changes to any such lock, You must deliver keys to Owner and to the Condominium or its managing agent. At the end of this Lease, You must deliver to Owner all keys to the Apartment. If You fail to return any keys, You shall pay Owner the cost of replacing any such keys

40. WINDOW GUARDS

You shall complete and deliver to the Condominium when requested, a notice with respect to the installation of window guards in the Apartment in the form required by the City of New York. You acknowledge that it is a violation of law to refuse, interfere with installation, or remove window guards where required

41. OWNER'S DEFAULT TO CONDOMINIUM

If (i) Owner defaults in the payment to the Condominium of common charges or other assessments payable to the Condominium with respect to the Apartment, (ii) the Condominium notifies You of such default, and (iii) the Condominium instructs You to pay the rent under this Lease to the Condominium, then You shall pay all future installments of rent payable under this Lease to the Condominium until such time as the Condominium advises that the Owner's default has been cured. Owner acknowledges that if You pay any installment of rent payable under this Lease to the Condominium as herein provided, You have satisfied your obligation to pay any such installment of rent to Owner. Nothing contained in this Article shall suspend your obligation to pay rent under this Lease

42. BINDING EFFECT

It is expressly understood and agreed that this Lease shall not constitute an offer or create any rights in your favor, and shall in no way obligate or be binding upon Owner and this Lease shall have no force or effect until this Lease is duly executed by You and Owner and a fully executed copy of this Lease is delivered to both You and Owner

TO CONFIRM OUR AGREEMENTS OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1

WITNESS

_____ (L.S.)
Owner's Signature

_____ (L.S.)
Tenant's Signature

_____ (L.S.)
Tenant's Signature

## GUARANTY

The undersigned Guarantor guarantees to Owner the strict performance of and observance by Lessee of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Lessee is not paying rent or not observing and complying with all of the provisions of the attached Lease. Guarantor agrees to be equally liable with Lessee so that Owner may sue Guarantor directly without first suing Lessee. The Guarantor further agrees that this guaranty shall remain in full effect even if the Lease is changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by jury in any such action, proceeding or counterclaim brought against the other on any matters concerning the attached Lease or the Guaranty

Dated _____

_____          _____
Witness                                         Guarantor

                                                    _____
                                                    Address

LEASE RIDER

THIS RIDER (the "Rider"), attached to and made a part of that certain Condominium Apartment Lease (the "Lease") of the apartment known as Unit 38 A and C (the "Apartment") in the building known as Leighton House and located at 360 East 88th Street, New York, NY 10128, dated as of January __, 2007 by and between Isaac and Ellen Sonsino (the "Owner") and the Government of the Republic of South Africa (the "Lessee"). Capitalized terms contained and not defined in this Rider shall have the meanings ascribed to such terms in the Lease unless the context otherwise requires.

1.    Security Deposit.   As security for the due and proper performance of all obligations of Lessee under the Lease, Lessee shall give the Owner the sum of $99,000.00 upon execution of the Lease (the "Security Deposit"). In addition, in lieu of any waiver of diplomatic immunity Lessee may have, Lessee shall give the Owner the additional sum of $198,000.00 upon execution of the Lease (the "Additional Security Deposit" and, together with the Security Deposit, the "Security Deposits") as further security for the due and proper performance of all obligations of Lessee under the Lease. Lessee acknowledges that no trust is created with respect to the Security Deposits, and the Security Deposits may be commingled with other funds of the Owner.

If Lessee carries out all of its agreements in the Lease and vacates the Apartment and returns it to the Owner in the same condition it was in when Lessee first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty through no fault of Lessee, Owner will return to Lessee the full amount of the Security Deposits within sixty (60) days after the Lease ends. If, however, Lessee does not fully carry out all of its agreements in the Lease, Owner may keep all or part of such Security Deposits to the extent necessary to pay Owner for any losses incurred as a result of Lessee's failure to carry out any agreements in the Lease, including the agreement to pay rent or other amounts due under the Lease, in which case Owner will return the remainder, if any, of the Security Deposits to Lessee within sixty (60) days after application of the Security Deposits to compensate Owner for such losses. In no event shall Owner be obligated to pay interest with respect to the Security Deposits.

If Owner sells the Apartment during the term of the Lease, Owner will turn over the Security Deposits, net of any losses incurred by Owner up to and including the day of such sale as a result of Lessee's failure to comply with all of its agreements in the Lease, including the obligation to pay rent and any other amounts due under the Lease, within five (5) days after the sale to the Lessee or the purchaser of the Apartment (the "Purchaser"), in which case Owner shall have no further obligation to the Lessee with respect to the Security Deposits, and, if such net amount is paid to the Purchaser, Lessee shall look solely to the Purchaser with respect to the Security Deposits or portion thereof delivered to Purchaser.

2.    Insurance.    Owner will obtain insurance from Chubb or a comparable underwriter for the Lease term and any Extension Term in the amount of $500,000 for the physical premises, including all fixtures and appliances; $50,000 for personal property as set forth in Section 3 of this Rider; and $2 million for general liability.  Lessee shall be responsible for the payment of the premiums for this insurance within 10 days of presentation of an invoice for the insurance by Owner.  This insurance will be for the sole benefit of Owner, and Lessee will not be the owner of this insurance, nor will it be a named insured or loss payee under this insurance.

      In addition, and notwithstanding anything to the contrary in the Lease, Lessee shall obtain at its expense and maintain in full force and effect during the term of the Lease and any Extension Term of the Lease a general liability insurance policy with respect to the Apartment providing $18 million of coverage underwritten by an insurance company in A.M. Best Class XIV or XV and having an A.M. Best rating of A or better.  This insurance policy shall name Owner as an additional insured and as loss payee.  A certificate of insurance setting forth such coverage shall be delivered to Owner at least ten (10) days prior to Lessee's occupancy of the Apartment and shall be a condition of Lessee's right to occupy the Apartment.  Failure of Lessee to obtain such insurance shall not relieve it of its other obligations under the Lease, including the obligation to pay rent and other amounts due under the Lease.

3.    Furniture.    The furniture and furnishings of Owner contained in the Apartment and subject to the provisions of Section 34 of the Lease are as follows:

> Dining room chandelier
> Large concave mirror
> Console fixed to wall in living room
> Kitchen table
> Kitchen light fixture
> ~~Bed tables (2)~~
> ~~Black stone sculpture in living room~~

JS. E⌐)
JS. E⌐)

4.    Utilities.    The Condominium bills separately for electric consumption and a portion of cable television services.  These utilities, and any other utilities that the Condominium may at any time bill directly to the owners of units, shall be the obligation of Lessee during the term of the Lease and any Extension Term of the Lease.  If the Condominium bills these amounts to Owner, Lessee shall reimburse Owner upon presentation of invoices; and if the Condominium bills the amounts to Lessee, Lessee shall pay them directly.

5.    Brokerage.    Lessee represents to Owner that it has not dealt with any real estate brokers in connection with the leasing of the Apartment other than Barbara Cardozo of Prudential Douglas Elliman and Bobby Neil of Citi-Habitats.  Lessee shall be obligated to pay such brokers all fees and other amounts owed to them with respect to the leasing of the Apartment and shall hold harmless and fully indemnify Owner from and against any



claims or losses and expenses incurred by Owner with respect to brokerage fees in connection with the leasing of the Apartment, including but not limited to any claims, losses or expenses resulting from a breach of Lessee's representations set forth in this Section 5 of the Rider.

6.      Lessee's Right to Terminate the Lease.   (A) If at any time during the term of the Lease or any Extension Term of the Lease the Lessee shall cease to have diplomatic representation at the United Nations in New York, the Lessee shall be entitled to terminate the Lease by giving the Owner three (3) months' written notice thereof in accordance with Section 26B of the Lease, provided, that no such notice may be delivered before the first anniversary of the commencement of the term of the Lease. Such termination shall be effective on the last day of the calendar month in which the last day of the notice period occurs.  In lieu of termination at the end of the period set forth in the preceding sentence, Lessee may terminate the Lease immediately upon the occurrence of any of the conditions set forth in the first sentence of this Section 6 of the Rider upon payment of all rent and other amounts that would be due under the Lease through the end of such period, it being understood that the minimum term for which rent is payable under the Lease if the condition occurs is fifteen (15) months. Notwithstanding any such termination of the Lease, Lessee shall remain obligated for any amounts due under the Lease through the date of termination. (B)  If at any time during the term of the Lease or any Extension Term of the Lease, Lessee shall terminate Mr. Baso Sangqu's assignment as part of the diplomatic mission in New York, and either Lessor or the Condominium refuse to allow Lessee to place the successor ambassador to Mr. Sangqu as a replacement occupant within the Premises, Lessee may terminate the Lease by giving the Owner ninety (90) days written notice thereof in accordance with Section 26B of the Lease.

7.      Notwithstanding the language utilized in the pre-printed lease form, Tenant shall be THE GOVERNMENT OF THE REPUBLIC OF SOUTH AFRICA through the Permanent Mission of South Africa to the United Nations, New York, as represented by Rowland Hopley, in his capacity as the Counselor-Administration, duly authorised hereto.

8.      Paragraph 13(d) of the Lease shall be supplemented with the following language being added after the last sentence thereto "The Lessor is to provide the Lessee with proof of the expenses incurred by means of a receipt or invoice before the Lessee shall pay."

9.      Paragraph 6 of the Lease shall be amended so that the last sentence thereto shall provide "If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, this Lease may be cancelled by You, and in the event of such cancellation, all prepaid rent and security deposit shall be promptly returned to you."

10.     The first two sentences of Paragraph 15 of the Lease shall be amended to read: "During the daytime and having given the Lessee reasonable notice and at a time agreed upon by the Lessee and accompanied by a representative of the Lessee the Lessor, his

representatives and agents or employees of the Condominium may enter the Apartment for the following reasons:"

11.    Paragraph 15 of the Lease shall be amended to include a subparagraph "f" which shall provide "In taking access to the Apartment in accordance with this paragraph 15, Lessor shall avoid unduly inconveniencing the Lessee and shall not interfere with the Lessee in its use and occupation of the premises more than is reasonably necessary and shall make good any damage caused thereby."

12.    Paragraph 17 of the Lease shall be amended to include a fourteen (14) day notice written notice period for all leasehold defaults.

13.    For purposes of paragraph 20(a)(iii) of the Lease, it is understood and agreed that the term "preparing" shall not include improvements or alterations to the Apartment.

14.    Paragraph 26 of the Lease shall be amended to read "Any notice required to be served under this Agreement shall be sufficiently served if posted by registered post or delivered by hand to the Lessor at his/her address _____, and the Lessee at the address 333 East 38th Street, 9th Floor, New York, New York 10016, as the case may be, and shall be rebuttably presumed to have been received on the day of delivery if delivered by hand or three (3) days after posting if posted PROVIDED ALWAYS that the aforesaid shall not derogate from or prejudice the inviolability which the premises of the mission enjoys in terms of customary international law. Either party may change such address by written notice to the other party which notice shall be delivered by hand or sent by registered post."

*[handwritten: 36 Old Mill Road, Westport, CT 06880]*

15.    Paragraph 34 of the Lease shall be supplemented to include the following words at the conclusion of the last sentence "such consent not to be unreasonably withheld or delayed in the case of the moving of non-fixtures listed in paragraph 3 of the Rider to the Lease."

16.    Nothing contained herein shall be deemed a waiver, in whole or in part, of Lessee's right to assert procedural and/or substantive defenses as well as any of Lessee's rights as permitted by the Federal Sovereign Immunities Act, the Vienna Convention, or any other statute, treaty, convention, rule or regulation. The failure of the Lessee to seek redress for any violation of its rights under the aforesaid statutes, treaties, rules and/or regulations shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation.

17.    It is expressly understood that the Premises are going to be used as the residence of the chief of a diplomatic mission, as such term is defined and/or used in the Federal Sovereign Immunities Act and/or the Vienna Convention.

OWNER:

_____
Isaac Sonsino

_____
Ellen Sonsino


LESSEE:
THE GOVERNMENT OF THE
REPUBLIC OF SOUTH AFRICA
     BY:  THE PERMANENT
           MISSION TO THE
           UNITED NATIONS

BY: _____
        Mr. Rowland Hopley

*Index No:*                                                 *Year 2010*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE GOVERNMENT OF THE REPUBLIC
OF SOUTH AFRICA.,

                                        Plaintiff,

                   -against-


ISAAC SONSION AND ELLEN SONSINO,

                                        Defendant.

## COMPLAINT

### MICHAEL B. KRAMER & ASSOCIATES

*Attorneys for* Plaintiff
150 EAST 58TH STREET
SUITE 1201
NEW YORK, NEW YORK  10155
(212) 319-0304

*To.*
*Attorney(s) for*

*Service of a copy of the within*                                           *is hereby admitted.*


*Dated:*  September 3, 2010

                                        *Attorney(s) for*

PLEASE TAKE NOTICE

[ ]        *that the within is a (certified) true copy of a*
           *entered in the office of the clerk of the within named Court on*


     NOTICE OF ENTRY

[ ]        *that an Order of which the within is a true copy will be presented for settlement to the Hon.*

                                        *one of the judges of the within named Court,*
           *at*
           *on*                                  *20       . at*                    *M.*
     NOTICE OF SETTLEMENT

*Dated::*  September 3, 2010

                              ### MICHAEL B. KRAMER & ASSOCIATES

                              *Attorneys for* Plaintiff
                              150 EAST 58TH STREET
                              SUITE 1201
                              NEW YORK, NEW YORK  10155
                              (212) 319-0304